**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEROME JUNIOR WASHINGTON, | ) | |
| | ) | Civil Action No. 22 – 1201 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge David S. Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| MS. WRIGHT, Regional Manager | ) | |
| LPM of Psychological Services, and | ) | |
| ROBERT D. GILMORE, | ) | |
| Superintendent of SCI-Greene, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

For the following reasons, the Court will dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### A. <u>Factual Allegations</u>

Plaintiff Jerome Junior Washington ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections. He initiated this prisoner civil rights action by the filing of a Motion for Leave to Proceed *in forma pauperis* (ECF No. 1), which was granted on August 30, 2022 (ECF No. 3). In his Complaint, Plaintiff alleges that he is a "D Roster" inmate, which he states is a mental health rating that identifies him as having a serious mental illness. (ECF No. 4, ¶ 8.) His claims stem from his placement in the Diversionary Treatment Unit ("DTU"), a Level 5 Housing Unit,[1] at SCI-Greene where Defendant Gilmore was the former Superintendent. Id., ¶¶ 11, 15. He states that the DTU is a type of specialized housing for D

---

[1] Level 5 Housing Units are generally referred to as Restricted Housing Units ("RHU"), but they may also include specialized housing units operated within a setting similar to a RHU.

Roster inmates who present safety and/or security needs that cannot be accommodated by a less restrictive housing unit.  Id., ¶ 6.  He admits that his time in the DTU was for misconducts he received "mostly for self-mutilation."  Id., ¶ 12.

Plaintiff states that he has been in the DTU since Aril 4, 2018, but that is believed to be a typo.  Records from a previous case that Plaintiff filed in this Court show that Plaintiff was removed from the Secure Residential Treatment Unit ("SRTU") and placed in the DTU at SCI-Greene on April 4, 2019.  See Washington v. Wetzel, et al., Civil No. 18-1390, ECF No. 119, ¶ 86 (W.D. Pa.).  Plaintiff generally complains that inmates in the DTU are not provided with adequate mental health treatment for their severe mental illness.  He specifically alleges that the DTU is a "chaotic environment" where inmates are subjected to "unjustified assaults by correctional officers," "sexual harassment by male correctional officers," "correctional officers who encourage mentally ill inmates to kill themselves," "inmates who bang on their steel toilets all day and night," "inmates who yell all day and night," "frequent threats of bodily harm by correctional officers," and "unjustified use of chemical agents" that cause skin irritation and breathing difficulty.  (ECF No. 4, ¶ 17.)  He alleges that the conditions of confinement in the DTU causes mental illness to worsen.  He also alleges that DTU inmates are denied adequate psychiatric care and medication, which significantly affects their daily activities and puts them at a greater risk of suicide.  Id.  The Complaint states, and records from the previous referred to case support the fact that Plaintiff was transferred to SCI-Rockview on June 29, 2020, at which time he was placed in the Behavioral Management Unit ("BMU").  Id., ¶ 33.

Plaintiff appears to place blame for the lack of adequate mental health treatment in the DTU on Defendant Ms. Wright, who he alleges is the regional manager of psychological services

responsible for the psychological services within every DOC institution in Pennsylvania.[2]  Id., ¶ 5.  He complains that Ms. Wright does not follow DOC policy with respect to providing inmates in specialized housing adequate mental health treatment and that as a result she has violated the Eighth Amendment.  Id., ¶¶ 27-28.  He also asserts a claim for a violation of his rights under the Equal Protection Clause.  Id., ¶ 29.  He seeks compensatory, punitive and declaratory relief, as well as injunctive relief generally in the form of better mental health care for mentally ill inmates and better training for corrections officials who work with those inmates.[3]  Id., ¶¶ 29-32.

### B.  Standard of Review

When a plaintiff has requested leave to proceed *in forma pauperis*, district courts must review his allegations in accordance with 28 U.S.C. § 1915(e).  Section 1915(e)(2) requires federal courts to review complaints filed *in forma pauperis* and to dismiss, at any time, any action that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[4]

When determining whether an action has failed to state a claim for purposes of § 1915(e)(2)(B)(ii), the Court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  D'Agostino v. CECOM RDEC, 436 F. App'x 70, 72

---

[2] Plaintiff filed another lawsuit against Defendant Wright in November 2019 at CA No. 19-1462.  It is unclear, but it appears that his allegations against Defendant Wright in this case may be duplicative of his allegations against her in that case.

[3] It is noted that Plaintiff spends a significant portion of his Complaint complaining about his review by Ms. Wright that occurred on May 16, 2019, as well as some comments made by Lt. Braunlich in that review.  *See* ECF No. 4, ¶¶ 21-26.  The relevance of this review, as well as the comments made by Lt. Braunlich, appear to be insignificant and unrelated to Plaintiff's claims.  Furthermore, the event that Plaintiff claims Lt. Bruanlich was referring to in his comments made at his review was the subject of Plaintiff's case filed at CA No. 17-988.

[4] Dismissal under § 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  Neitzke v. Williams, 490 U.S. 319, 324 (1989).

(3d Cir. 2011). That means that the Court must dismiss a complaint if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff. Twombly, 550 U.S. at 555-56; *see also* Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above a speculative level[.]" Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *See* Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the

4

applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

## C. Discussion

### 1. Statute of Limitations

Congress has not established a time limitation for a § 1983 cause of action. Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in* Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. 2009). The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action. Wilson, 471 U.S. at 278. In Pennsylvania, the statute of limitations for tort actions is two years. 42 Pa. Con. Stat. Ann. § 5524. Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years. *See* Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run. *See* Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery v.

DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).  "The cause of action accrues even though the full extent of the injury is not then known or predictable."  Wallace, 549 U.S. at 391 (citations omitted).

"When screening a complaint under § 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required."  Whitenight v. Commonwealth of Pennsylvania State Police, 674 F. App'x 142, 144 (3d Cir. 2017) (citing cases); see also Smith v. Delaware County Court, 260 F. App'x 454, 455 (3d Cir. 2008).  Here, affording Plaintiff the most liberal construction of his *pro se* Complaint, his claims against the Defendants are time barred as they accrued, at the absolute latest, before he was transferred to SCI-Rockview on June 29, 2020, and Plaintiff did not file his Complaint in this case until August 11, 2022.  As such, the Complaint appears to have been untimely filed beyond the applicable statute of limitations and should therefore be dismissed for Plaintiff's failure to state a claim upon which relief may be granted.  *See* Jones v. Bock, 549 U.S. 199, 215 (2007) (If the allegations, taken as true, show that relief is barred by the applicable statute of limitations then a complaint is subject to dismissal for failure to state a claim).  The Court will proceed to address alternative reasons why the Complaint is also subject to dismissal for failure to state a claim.

## 2.  **Personal Involvement**

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See*, *e.g.*, Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well-established that, in the Third Circuit, personal involvement of defendants in alleged constitutional deprivations is a requirement in a

section 1983 case and that a complaint must allege such personal involvement.  *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  Id.  As the court stated in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted).  Courts routinely hold that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.

Plaintiff has failed to allege the personal involvement of Defendant Gilmore or Defendant Wright with respect to any of his claims.  With respect to Defendant Gilmore, Plaintiff alleges only a single fact, that as Superintendent he is responsible for the overall operation of SCI-Greene.  (ECF No. 4, ¶ 5.)  Similarly, with respect to Defendant Wright, Plaintiff merely alleges that she is responsible for the overall oversight of psychological services provided at every DOC institution in Pennsylvania.  Id., ¶ 4.  However, he does not allege that either Defendant directed or participated in any of the alleged wrongdoing that forms the basis of his claims.  For example, there are no pleaded facts to suggest that either of them knew of and disregarded any serious risk of harm to Plaintiff's mental health or made any treatment decisions regarding his care.  Based on the contents of the Complaint, it is quite clear that Plaintiff seeks to hold both of these Defendants liable based solely on the operation of *respondeat superior*, and for that reason alone he has failed to state a claim against either of them.  However, for the reasons that follow, to the

extent it can be found that Plaintiff has sufficiently alleged the personal involvement of

Defendant Wright, the Court finds that he has nevertheless failed to state a claim against her.

> **3.  Deliberate Indifference**

Plaintiff asserts a violation of his rights under the Eighth Amendment by alleging that

Defendant Wright was deliberately indifferent to his serious mental health needs.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual

punishments."  U.S. CONST. amend. VIII.  This protection, enforced against the states through

the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.

In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter

and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

Farmer v. Brennan, 511 U.S. 825,832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27

(1984)).

In a situation in which a prisoner alleges deliberate indifference to a medical need, a

plaintiff must plead (1) a serious medical need, and (2) acts or omissions by prison officials that

indicate deliberate indifference to that need.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

With respect to the first prong, a medical need is "serious" if it is one that has been

diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay

person would recognize the necessity for a doctor's attention.  Monmouth County Correctional

Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987).

With respect to the second prong, deliberate indifference is properly pleaded by factual

allegations supporting the conclusion that the official knew of and disregarded an excessive risk

to inmate safety.  Farmer, 511 U.S. at 837.  The official must be "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists" and must also "draw the

inference." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The Third Circuit has held that this standard is met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999).

It appears that Plaintiff alleges that Defendant Wright was deliberately indifferent to his serious mental health needs by not following DOC policy, which, as a result, denied him and other mentally ill inmates adequate mental health treatment.

First and foremost, DOC policies do not create a right and do not have the force of law. See Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); see also Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). As such, a violation of such policy does not in and of itself amount to a constitutional violation. See United States v. Fattah, 858 F.3d 801, 813-14 (3d Cir. 2017) (citing United States v. Christie, 624 F.3d 558, 573 (3d Cir. 2010) for approval that a "violation of internal policy alone does not amount to a violation of constitutional due process" because government policies and guidelines "do not themselves create rights"); Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). Nevertheless, even if Plaintiff is alleging that Defendant Wright's failure to comply with DOC policy somehow indirectly resulted in his denial of mental health care, Plaintiff fails to plead any

facts suggesting that Defendant Wright was deliberately indifferent to his serious mental health needs. For example, nowhere in his Complaint does he identify one instance where he was denied a request for medical assistance or treatment that in turn resulted in a substantial risk of serious harm to his health and safety, much less that Defendant Wright knew of and disregarded that risk. As such, Plaintiff has failed to state a claim against Defendant Wright for a violation of the Eighth Amendment.

### 4.  **Equal Protection**

Plaintiff alleges a violation of the Equal Protection Clause. Put simply, the Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). The Supreme Court has explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statue or by its improper execution through duly constitutional agents.'" Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923) (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)). "The Equal Protection Clause does not forbid classifications." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). But the distinctions between classes "must be rationally related to a legitimate governmental purpose." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446 (1985).

To state an equal protection claim, a plaintiff must plead sufficient facts to conclude that the defendant has treated him differently from a similarly situated party and that the defendant's explanation for the differing treatment does not satisfy the relevant level of scrutiny. Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs., 867 F.3d 338, 348 (3d Cir. 2017) (citing City of Cleburne, 473 U.S. at 439-40). The failure to identify similarly situated persons

10

dooms an equal-protection claim.  *See* Hill v. Borough v. Kutzdown, 455 F.3d 225, 239 (3d Cir. 2006) (citing Levenstein v. Salafsky, 414 F.3d 767, 776 (7th Cir. 2005)) (stating equal-protection claim "must fail because [plaintiff] does not allege the existence of similarly situated individuals").

While Plaintiff alleges a violation of the Equal Protection Clause, he does not clearly articulate how and to whom he was treated differently, and for that reason alone he has failed to state a claim.  However, it appears that what Plaintiff *may* be claiming is that mentally ill individuals in prison are treated differently than mentally ill individuals not in prison.  *See* ECF No. 4, ¶¶ 30-32.  Specifically, he appears to state that to save money, the DOC does not employ qualified mental health professionals nor provide mentally ill inmates with the treatment that they require and would receive if they were not in prison.  Id.  While it is not clear whether this claim is directed at Defendant Wright, and what authority she may have in the hiring decisions of mental health professionals and in regard to those professionals' treatment decisions, what is clear is that prisoners are not similarly situated to non-prisoners for purposes of an equal protection claim, *see* Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998), especially when it comes to cost considerations that figure into medical care decisions.  *See* Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) (prisoners are not guaranteed "the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.")  Because Plaintiff does not identify any other similarly situated inmates who were treated differently, he has failed to state an equal protection claim.

### D.  Amendment

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would

be inequitable or futile.  *See* <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 114 (3d Cir.

2002).  Based on his current allegations, the Court can imagine no additional facts Plaintiff could

plead that would overcome the deficiencies in his Complaint, particularly because it appears that

the Complaint was untimely filed and that he seeks to hold the Defendants liable based on a

theory of *respondeat superior*.  Accordingly, the Court will not grant Plaintiff leave to amend.

       A separate Order follows.

<u>Dated: October 19, 2023</u>

                                     <u>s/David Stewart Cercone</u>
                                       David Stewart Cercone
                                       Senior United States District Judge

Cc:    Jerome Junior Washington
        SCI Forest
        P.O. Box 945
        286 Woodland Drive
        Marienville, PA  16239

        *(Via United States Postal Service mail)*